Michael Schumacher (#262403)
**RIGRODSKY & LONG, P.A.**
155 Jackson Street, #1903
San Francisco, CA 94111
Telephone: (415) 855-8995
Facsimile: (302) 654-7530
Email: ms@rl-legal.com

*Attorneys for Plaintiff*

[Additional counsel on signature page]

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSAN VANA, On Behalf of Herself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>IMPAX LABORATORIES, INC., ATLAS HOLDINGS, INC., K2 MERGER SUB CORPORATION, LESLIE Z. BENET, PAUL M. BISARO, J. KEVIN BUCHI, ROBERT L. BURR, ALLEN CHAO, MARY K. PENDERGAST, PETER R. TERRERI, JANET S. VERGIS, and AMNEAL PHARMACEUTICALS LLC,<br><br>Defendants. | Case No. _____<br><br>CLASS ACTION<br><br>**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>JURY TRIAL DEMANDED |

Plaintiff, by and through her attorneys, alleges upon personal knowledge as to herself, and upon information and belief based upon, among other things, the investigation of counsel as to all other allegations herein, as follows:

## SUMMARY OF THE ACTION

1.  This action stems from a proposed "Up-C" transaction announced on October 17, 2017 (the "Proposed Transaction"), pursuant to which Impax Laboratories, Inc. ("Impax" or the "Company") and its subsidiaries, Atlas Holdings, Inc. ("Holdco") and K2 Merger Sub Corporation ("Merger Sub"), will be acquired by Amneal Pharmaceuticals LLC ("Amneal").

COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

2.     On October 17, 2017, Impax's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into a Business Combination Agreement with Amneal, which was amended on November 2, 2017 (as amended, the "Merger Agreement"). Pursuant to the terms of the Merger Agreement, (i) Merger Sub will merge with and into Impax, with Impax surviving the merger as a direct wholly owned subsidiary of Holdco; (ii) Impax will convert into a Delaware limited liability company to be named Impax Laboratories, LLC; (iii) Holdco will contribute all of the equity interests of Impax to Amneal in exchange for certain equity interests of Amneal; (iv) Holdco will operate as a new holding company, which will be renamed Amneal Pharmaceuticals, Inc. ("New Amneal"); (v) New Amneal will issue shares of Class B common stock to the existing members of Amneal (the "Existing Amneal Members"); and (vi) New Amneal will become the managing member of Amneal.

3.     In connection with the Proposed Transaction, each share of common stock of Impax will be converted into the right to receive one share of New Amneal Class A common stock. Holders of Impax common stock immediately prior to the Proposed Transaction will collectively hold approximately 25%, and the Existing Amneal Members will hold approximately 75%, of the voting and economic interests in the combined businesses of Impax and Amneal under New Amneal. Following the closing of the Proposed Transaction and a private sale of New Amneal common stock to certain institutional investors including TPG Improv Holdings, L.P. ("TPG") and funds affiliated with Fidelity Management & Research Company ("Fidelity," and together with TPG, the "PIPE Investors") pursuant to a purchase agreement, Existing Amneal Members will hold approximately 60% of the voting power of the outstanding shares of New Amneal common stock and the PIPE Investors will hold approximately 15% of the voting power of the outstanding New Amneal common shares.

4.     On November 21, 2017, defendants filed a Form S-4 Registration Statement (the "Registration Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

5.     The Registration Statement omits material information with respect to the

2
COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Proposed Transaction, which renders the Registration Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Registration Statement.

## JURISDICTION AND VENUE

6.  This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

7.  This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8.  Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

9.  Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Impax common stock.

10. Defendant Impax is a Delaware corporation and maintains its principal executive offices at 30831 Huntwood Avenue, Hayward, CA 94544. Impax's common stock is traded on the NasdaqGS under the ticker symbol "IPXL."

11. Defendant Holdco is a Delaware corporation, a wholly-owned subsidiary of Impax, and a party to the Merger Agreement.

12. Defendant Merger Sub is a Delaware corporation, a wholly-owned subsidiary of Holdco, and a party to the Merger Agreement.

13. Defendant Leslie Z. Benet ("Benet") is a director of Impax.

14. Defendant Paul M. Bisaro ("Bisaro") is a director, and the President and Chief Executive Officer ("CEO") of Impax.

15. Defendant J. Kevin Buchi ("Buchi") is a director of Impax.

16. Defendant Robert L. Burr ("Burr") is Chairman of the Board of Impax.

17. Defendant Allen Chao ("Chao") is a director of Impax.

18. Defendant Mary K. Pendergast ("Pendergast") is a director of Impax.

19. Defendant Peter R. Terreri ("Terreri") is a director of Impax.

20. Defendant Janet S. Vergis ("Vergis") is a director of Impax.

21. The defendants identified in paragraphs 13 through 20 are collectively referred to herein as the "Individual Defendants."

22. Defendant Amneal is a Delaware limited liability company and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

23. Plaintiff brings this action as a class action on behalf of herself and the other public stockholders of Impax (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

24. This action is properly maintainable as a class action.

25. The Class is so numerous that joinder of all members is impracticable. As of October 27, 2017, there were approximately 74,113,674 shares of Impax common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

26. Questions of law and fact are common to the Class, including, among others, whether defendants violated the 1934 Act and whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

27. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

28. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

29. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

30. Impax is a specialty pharmaceutical company applying formulation and development expertise, as well as its drug delivery technology, to the development, manufacture, and marketing of bioequivalent pharmaceutical products, or "generics," in addition to the development, manufacture, and marketing of branded products. The Company operates in two segments: "Impax Generics" and "Impax Specialty Pharma."

31. The Impax Generics division includes the Company's legacy Global Pharmaceuticals business, as well as the acquired businesses of CorePharma, LLC and Lineage Therapeutics, Inc. from the Company's acquisition of Tower Holdings, Inc. ("Tower") and its subsidiaries on March 9, 2015 (the "Tower Acquisition"). Impax Generics concentrates its efforts on generic products, which are the pharmaceutical and therapeutic equivalents of brand-name drug products and are usually marketed under their established nonproprietary drug names rather than by a brand name.

32. The Impax Specialty Pharma division includes the Company's legacy Impax Pharmaceuticals business, as well as the acquired business of Amedra Pharmaceuticals, LLC from the Tower Acquisition. Impax Specialty Pharma utilizes its specialty sales force to market proprietary branded pharmaceutical products for the treatment of central nervous system disorders and other select specialty segments.

33.     On October 17, 2017, the Individual Defendants caused the Company to enter into the Merger Agreement with Amneal.

*The Registration Statement Omits Material Information, Rendering It False and Misleading*

34.     On November 21, 2017, defendants filed the Registration Statement with the SEC in connection with the Proposed Transaction.

35.     The Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading.

36.     The Registration Statement omits material information regarding the financial projections of Impax, Amneal, and New Amneal, as well as the valuation analyses performed by the Company's financial advisor in connection with the Proposed Transaction, Morgan Stanley & Co. LLC ("Morgan Stanley").

37.     The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.  Moreover, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

38.     With respect to the financial projections of Impax, Amneal, and New Amneal, the Registration Statement discloses certain projections for non-GAAP (generally accepted accounting principles) metrics, including Adjusted EBITDA and Unlevered Free Cash Flow, but it fails to provide stockholders with the necessary line item projections for the metrics used to calculate these non-GAAP measures or otherwise reconcile the non-GAAP projections to the most comparable GAAP measures.

39.     To avoid misleading stockholders with non-GAAP financial measures in business combinations such as the Proposed Transaction, publicly traded companies must provide a reconciliation of the differences between the non-GAAP financial measures with the most

COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

comparable financial measures calculated and presented in accordance with GAAP. Indeed, defendants acknowledge in the Registration Statement that the Adjusted EBITDA and Unlevered Free Cash Flow "measures are not in accordance with, or a substitute for, GAAP, and may be different from or inconsistent with non-GAAP financial measures used by other companies," and that these measures "should not be considered in isolation or as a substitute for cash flows from operating activities or any other measure of financial performance presented in accordance with GAAP or as a measure of a company's profitability or liquidity." As such, stockholders are entitled to the line item projections used to calculate the Company's non-GAAP projections or a reconciliation of the non-GAAP projections to the most comparable GAAP measures.

40. Additionally, although the Registration Statement discloses certain of the Company's financial projections, it fails to disclose Impax's projections of earnings for years 2018 through 2020, which were relied upon by Morgan Stanley in its Pro Forma Merger Analysis.

41. With respect to Morgan Stanley's Discounted Cash Flow Analysis of Impax, the Registration Statement fails to disclose: (i) the line item projections used to calculate Impax's unlevered free cash flows for years 2018 through 2021, including EBIT, stock-based compensation expense, depreciation and amortization, and changes in working capital; (ii) the specific inputs and assumptions underlying the discount rate range of 6.8% to 8.1% selected by Morgan Stanley in its analysis; (iii) the Company's net debt as of September 30, 2017; and (iv) the terminal exit multiples implied by Morgan Stanley's analysis.

42. With respect to Morgan Stanley's Equity Research Analysts' Price Targets, the Registration Statement fails to disclose identity of the 12 equity research analysts that published price targets for the Company, as well as the individual price targets set by each analyst.

43. With respect to Morgan Stanley's Discounted Cash Flow Analysis of Amneal, the Registration Statement fails to disclose: (i) the line item projections used to calculate Amneal's unlevered free cash flows for years 2018 through 2021, including EBIT, stock-based compensation expense, depreciation and amortization, changes in working capital, and milestone

1 payments; (ii) the specific inputs and assumptions underlying the discount rate range of 6.8% to
2 8.1% selected by Morgan Stanley in its analysis; (iii) Amneal's net debt as of September 30,
3 2017; and (iv) the terminal exit multiples implied by Morgan Stanley's analysis.

4     44.     With respect to Morgan Stanley's Pro Forma Merger Analysis, the Registration
5 Statement fails to disclose Impax's projections of earnings for years 2018 through 2020.

6     45.     The omission of this material information renders the Registration Statement false
7 and misleading, including, *inter alia*, the following sections of the Registration Statement: (i)
8 Unaudited Forecasted Financial Information; and (ii) Opinion of Impax's Financial Advisor.

9     46.     The Registration Statement omits material information relating to potential
10 conflicts of interest of one of Impax's (undisclosed) financial advisors in connection with the
11 Proposed Transaction.  Due to the central role played by investment banks in the evaluation,
12 exploration, selection, and implementation of strategic alternatives, stockholders are entitled to
13 the full disclosure of investment banker compensation and all potential conflicts of interest.

14     47.     Specifically, the Registration Statement discloses that only Morgan Stanley
15 provided services and advice to Impax in connection with the Proposed Transaction.  However,
16 the joint press release issued by Impax and Amneal announcing the Proposed Transaction states:
17 "Morgan Stanley is serving as financial advisor to Impax, and Sullivan & Cromwell LLP is
18 serving as legal counsel.  *In addition, Impax received advice from BofA Merrill Lynch*."
19 (Emphasis added).  In connection with the Proposed Transaction, moreover, Amneal entered into
20 a commitment letter with JPMorgan Chase Bank, Bank of America, N.A., Merrill Lynch, Pierce,
21 Fenner & Smith Incorporated, and RBC Capital Markets (the "Debt Commitment Letter") to
22 provide debt financing to refinance both companies' currently outstanding debt obligations.

23     48.     Despite the fact that BofA Merrill Lynch has provided services to both of Impax
24 and Amneal in connection with the Proposed Transaction, the Registration Statement fails to
25 disclose material information relating to BofA Merrill Lynch's potential conflicts of interest.
26 Specifically, the Registration Statement fails to disclose: (i) the fact that Bank of America
27 Merrill Lynch provided advice to Impax in connection with the Proposed Transaction; (ii) the

timing and nature of the advice provided to Impax; (iii) the amount of compensation, if any, Bank of America Merrill Lynch earned or is expected to earn for providing advice and financing in connection with the Proposed Transaction; and (iv) whether Bank of America Merrill Lynch has provided any advisory or other financial services to Impax, Amneal, or their affiliates in the past and, if so, the amount of compensation earned in connection with those services.

49.     The omission of this material information renders the Registration Statement false and misleading, including, *inter alia*, the following sections of the Registration Statement: (i) Background of the Combination; (ii) Recommendation of the Impax Board and Reasons for the Combination; and (iii) Opinion of Impax's Financial Advisor.

50.     The Registration Statement omits material information relating to the background leading to the Proposed Transaction. The Company's stockholders are entitled to an accurate description of the process the directors used in coming to their decision to support the Proposed Transaction.

51.     The Registration Statement indicates that, in or around June 2017, the Company entered into confidentiality agreements with three parties that expressed an interest in strategic transaction with the Company. The Registration Statement, however, fails to disclose the terms of those confidentiality agreements, including whether they contain a standstill and/or "don't ask, don't waive" provision that are or were preventing those counterparties from submitting superior offers to acquire the Company. Notably, it is likely that such provisions do exist in light of the fact that Section 5.02(b) of the Merger Agreement provides, in part, that "Impax shall not terminate, waive, amend or modify any provision of, grant permission under, any 'standstill,' confidentiality or non-disclosure agreement to which Impax is a party, and Impax shall enforce the provisions of each such agreement."

52.     Further, the Registration Statement states that, on April 6, 2017, prior to engaging in negotiations with Amneal, Individual Defendant Bisaro discussed with certain members of the Board "several business development opportunities for Impax that merited further exploration." The Registration Statement, however, fails to disclose what those "business development

opportunities" were and the reason the Board determined not to pursue those potential opportunities.

53. Additionally, at a Board meeting held on September 11, 2017, the Board "discussed whether it would be advisable to initiate an auction process to explore strategic transactions available to Impax at such time." Although not explicitly stated in the background section, it is apparent that the Board determined not to initiate an auction or sales process to attempt to solicit superior offers for the Company. The Registration Statement must disclose the Board's reasons for declining to pursue such a sales process to attempt to maximize stockholder value. Indeed, the Registration Statement lists as a risk and potential negative factor of the Proposed Transaction "the fact that Impax negotiated exclusively with Amneal rather than conducting a public or private 'auction' or sales process of Impax."

54. The foregoing omitted information is material to stockholders, who would want to understand the Company's options and assess the efficacy and effectiveness of the Board's and management's decisions and negotiations to determine whether they have obtained, or have prevented the obtainment of, the best deal for the Company's stockholders.

55. The omission of this material information renders the Background of the Combination section of the Registration Statement false and misleading.

56. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Impax's stockholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Impax**

57. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

58. The Individual Defendants disseminated the false and misleading Registration Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Impax is liable

as the issuer of these statements.

59. The Registration Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Registration Statement.

60. The Individual Defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

61. The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Registration Statement and in other information reasonably available to stockholders.

62. The Registration Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

63. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

64. Because of the false and misleading statements in the Registration Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

**Claim for Violation of Section 20(a) of the 1934 Act
Against the Individual Defendants and Amneal**

65. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

66. The Individual Defendants and Amneal acted as controlling persons of Impax within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of Impax and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement, they had the power to influence and control and did influence and

control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

67.     Each of the Individual Defendants and Ameal was provided with or had unlimited access to copies of the Registration Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

68.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Registration Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly in the making of the Registration Statement.

69.     Amneal also had direct supervisory control over the composition of the Registration Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Registration Statement.

70.     By virtue of the foregoing, the Individual Defendants and Amneal violated Section 20(a) of the 1934 Act.

71.     As set forth above, the Individual Defendants and Amneal had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A.     Enjoining defendants and all persons acting in concert with them from proceeding

with, consummating, or closing the Proposed Transaction;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.     Directing the Individual Defendants to file a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.     Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.     Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated:  December 12, 2017

**RIGRODSKY & LONG, P.A.**

By:   */s/ Michael Schumacher*
Michael Schumacher (#262403)
155 Jackson Street, #1903
San Francisco, CA 94111
Telephone: (415) 855-8995
Facsimile: (302) 654-7530
Email: ms@rl-legal.com

Brian D. Long
Gina M. Serra
2 Righter Parkway, Suite 120
Wilmington, DE 19803
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Emails: bdl@rl-legal.com
gms@rl-legal.com

*Attorneys for Plaintiff*